IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| MICHAEL TILLMAN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Judge Pallmeyer |
| v. | ) | |
| | ) | |
| JON BURGE, et al., | ) | NO. 10 C 4551 |
| | ) | |
| Defendants. | ) | |

## DEFENDANT OFFICERS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

### INTRODUCTION

In a single footnote plaintiff concedes that Counts II and III are not viable under Seventh Circuit and Supreme Court precedent. (Plaintiff's Response Pg. 2-3). Desperate to keep this case in federal court, presumably for attorneys' fees, plaintiff, in the remaining 26 pages, tries to persuade this Court that he has some viable federal claims, which entitle him to federal jurisdiction. To that end, he offers his spin on district court decisions because the Seventh Circuit and the United States Supreme Court do not allot him a federal claim to remedy his allegations.

Plaintiff's entire *Brady* claim is based on his allegation that Defendant Officers withheld a "systematic pattern and practice of abuse and torture in Area 2 from the Plaintiff." (Pl.'s Comp. at ¶ 101). This proposed extension of *Brady* is absurd. Are we going to require an affirmative duty on every Chicago Police officer to notify the Cook County States Attorney's office of every citizen complaint made against that particular officer if he presents a case for criminal prosecution? How about lawsuits? Verbal reprimands? Traffic violations? Infidelity? Where does it end?

Even assuming such an allegation could support a *Brady* claim, this case just wont cut it. Plaintiff – especially Flint Taylor – his counsel and proffered expert on this issue – are now forced to concede that plaintiff was aware of "systematic pattern and practice of abuse" allegations and even presented witnesses, including Mr. Taylor, to support this theory at his trial.

In the end, the only claim plaintiff has left at his disposal is an Illinois state law malicious prosecution claim. His attempt to wedge these allegations into some sort of hybrid due process claim runs afoul of Seventh Circuit precedent. Accordingly, as with Counts II and III, the remainder of plaintiff's complaint should be dismissed.

# ARGUMENT

## I. PLAINTIFF WAS AFFORDED ALL THE PROCESS HE WAS DUE.

A due process claim must meet the requirements outlined by the Seventh Circuit in *Newsome*, which provides that a plaintiff may file a §1983 claim based on the denial of a fair trial only where material exculpatory evidence has been withheld from him in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001). Materiality, in the context of *Brady*, is prejudice. *United States v. Wilson*, 481 F.3d 475, 480 (7th Cir. 2007). "Prejudice exists if there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007). Materiality is not established by "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial . . . ." *U.S. v. Agurs,* 427 U.S. 97, 109-10 (1976). Here, plaintiff's entire *Brady* claim is based on his allegation that Defendant Officers withheld a "systematic pattern and practice of abuse and torture in Area 2 from the Plaintiff" (Pl.'s Comp. at ¶ 101), and if plaintiff were aware of such information he would have been acquitted. Unlike other district court cases he cites, plaintiff cannot deny that he was both aware of "pattern and practice" torture allegations at Area 2. Indeed, plaintiff introduced such "pattern and practice" evidence at his criminal trial. Nevertheless, plaintiff was ultimately convicted; by definition, therefore, evidence related to "pattern and practice abuse" allegations at Area 2 was not material. *Harris*, 486 F.3d at 1014.

### A. Pattern And Practice Of Abuse And Torture Evidence Is Not Material.

Plaintiff cites *Patterson*, *Cannon*, *Hobley*, *Howard*, *Orange and Walden* as cases that are on point because the due process claims are "based on nearly identical allegations to those by Plaintiff." (Pl.'s Resp. at p.5). That is not the case. In *Walden*, Judge Castillo rejected Mr. Walden's *Brady* claim, plead by the same counsel, based on his allegations that he was tortured into confessing. Judge Castillo, quoting Seventh Circuit precedent, explained, "a lying witness is certainly not a *Brady* violation." *Walden v. City of Chicago*, 04 C 0047, 2010 WL 5168789, at * 21 (N.D.Ill December 21, 2010). "It is already established law that *Brady* does not extend so far as to provide relief in a situation where a police officer makes a false statement to a prosecutor." *Id.* (citations omitted).

*Patterson*, *Cannon*, *Hobley*, *Howard* and *Orange* are not analogous either. In those cases the plaintiff alleged there was exculpatory evidence withheld outside of and in addition to a

coerced confession. Moreover, none of the cited cases presented a set of facts where it was undisputed that a plaintiff was aware of not only his own alleged "tortured confession" but also the so-called "systematic pattern and practice of abuse" of other arrestees. That is why this case is different. In this case, plaintiff admits he was aware of the Goldston Report, which he claims made a finding of systematic torture in Area 2 and made public in 1992. (Pl.'s Compl. At ¶ 80-81). After being confronted with his failure to apprise the court that testimony about allegations of a pattern and practice of torture at Area 2 where known to plaintiff, plaintiff was forced to admit that Flint Taylor, his own counsel and "an attorney who primarily represents victims of alleged police misconduct[1]," testified as a proffered expert at his criminal trial that defendants Dignan and Yucaitus "had a reputation for being untruthful, particularly concerning their dealings with suspects." (Def.'s Brief at Pg. 9) and (Pl.'s Resp. at p. 6, FN3). The testimony of Darrel Cannon, an alleged victim of torture at plaintiff's criminal trial (*Id.*) also did not change the outcome. It is clear, that unlike the other cases plaintiff cites, plaintiff was aware of evidence related to a so-called "pattern and practice of abuse" of arrestees at Area 2.

As fully explained below, plaintiff's knowledge of this evidence, alone, is enough to dismiss plaintiff's *Brady* claim. But the nail-in-the-coffin is that fact that evidence was not material to Mr. Tillman's case. Despite the introduction of this evidence in the form of a proffered expert witness and a "torture victim" – Mr. Tillman was convicted again. Here, the evidence was presented to the jury and plaintiff still lost. There is no better proof that alleged "pattern and practice" evidence is immaterial and would not have produced a different outcome. *Harris*, 486 F.3d at 1014.

In an attempt to salvage this claim, plaintiff argues in his response that if he had **more** evidence of "systematic abuse", than a jury would have reached a different result. (Pl.'s Resp. at p. 6, FN3). First, that is rank speculation. "A due process standard which is satisfied by mere speculation would convert *Brady* into a discovery device and impose an undue burden upon the district court." *U.S. v. Navarro*, 737 F.2d 625, 631 (7th Cir. 1984). Second, more of the same evidence is cumulative. To establish a *Brady* violation, a plaintiff must show that the evidence in question "is material and not merely impeaching or cumulative," and that it "probably would

---

[1] Flint Taylor also represented Andrew Wilson, who the Illinois Supreme Court reversed his conviction on the grounds his confession had been coerced in an opinion published in 1987. *People v. Wilson*, 116 Ill. 2d 29, 506 N.E.2d 571 (1987). Mr. Taylor filed Wilson's civil lawsuit alleging physical abuse at Area 2. *Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993), known to the plaintiff prior to his 1996 trial.

3

lead to an acquittal in the event of a new trial." *United States v. Hodges,* 315 F.3d 794, 801 (7th Cir. 2003). Where the evidence suppressed is merely cumulative impeachment evidence, there is no *Brady* violation. *U.S. v. Dweck,* 913 F.2d 365, 373 (7th Cir.1990).

For instance, *Brady* does not extend to "[e]vidence that impeaches an already thoroughly impeached witness." *United States v. Kozinski,* 16 F.3d 795, 819 (7th Cir.1994). Here, plaintiff presented evidence in the form of live witnesses who testified about "systematic torture." Darrell Cannon testified that he was tortured by the same detectives who interrogated Mr. Tillman. Plaintiff was even able to present Mr. Taylor to discuss his research on the "systematic torture" by the same detectives who plaintiff alleges tortured him. Plaintiff does not explain why any one or two more of the points he claims was withheld was not cumulative. *United States v. Ervin,* 540 F.3d 623, 632 (7th Cir. 2008) (evidence of witnesses prior misconduct was merely cumulative evidence which caused Brady claims to fail);*United States v. Senn,* 129 F.3d 886, 893 (7th Cir. 1997) ("Because the defendants did impeach [the witness] on a number of issues, they can't really make a convincing argument that additional impeachment had a reasonable probability of changing the outcome of the trial.").

Plaintiff was able to present evidence on this issue, but was still convicted for the murder of Betty Howard. Therefore the evidence was (and is) not material to Mr. Tillman's case. *See Richardson v. Briley*, 401 F.3d 794, 803 (7th Cir. 2005)(materiality is measured by a reasonable *probability*, not a reasonable *possibility*.)

### B. Plaintiff's Confession (Or Lack Thereof)[2] And "Pattern and Practice Abuse" Was Not Withheld From Him.

Besides failing to meet the materiality requirement to establish a due process claim, plaintiff cannot demonstrate that he was unaware of the existence (or lack thereof) of his confession, the circumstances surrounding the torture, and the "systematic pattern and practice of abuse" that he claims occurred in Area 2. As such, no *Brady* material was even withheld. *See Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003) *overturned on other grounds Wallace v. City of Chicago* 440 F.3d 421.

---

[2] Plaintiff cannot decide whether he confessed or not (*See* Section II below), but for purposes of this section, whether he did or he did not confess – we can all agree that Tillman himself knew what occurred in Area 2 and under *Gauger* his *Brady* claim fails. *See Gauger,* 349 F.3d at 360.

4

It is well established that allegations of a coerced confession do not constitute a *Brady* claim. As the *Gauger* court put it:

> Gauger argues that *Brady v. Maryland,* a due process case that entitles criminal defendants to be shown any exculpatory evidence (including evidence usable to impeach a prosecution witness) in the possession of the prosecutors, required the detectives to give truthful versions of Gauger's statements at the interrogation to the prosecutors to be forwarded to his counsel at his criminal trial. **We find the proposed extension of *Brady* difficult even to understand. It implies that the state has a duty not merely to disclose but also to create truthful exculpatory evidence. Indeed the duty to disclose falls out, because Gauger knew what he had said at the interrogation.** (citations omitted). The problem was not that evidence useful to him was being concealed; the problem was that the detectives were giving false evidence. Gauger wants to make every false statement by a prosecution witness the basis for a civil rights suit, on the theory that by failing to correct the statement the prosecution deprived the defendant of *Brady* material, that is, the correction itself.

*Gauger,* 349 F.3d at 360. (emphasis added).

*Gauger* is not an aberration. *See also Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006)("Nor can *Brady* serve as the basis of a cause of action against the officers for failing to disclose these circumstances [a coerced confession] to the prosecutor. *Brady* rights run to the criminal defendant, not to the prosecution. The Constitution does not require that police testify *truthfully;* rather the constitutional rule is that the defendant is entitled to a trial that will enable jurors to determine where the truth lies."); *Harris v. Kuba*, 489 F.3d 1010, 1015 (7th Cir. 2007) (failing to turn over evidence of defendant's own alibi was not a *Brady* violation). *Harris* alleged that the police violated *Brady* by lying to prosecutors about the basis of his "false confession." *Harris,* 489 F.3d at 1015. The Seventh Circuit rejected plaintiff's *Brady* claim explaining:

> [Plaintiff] essentially seeks an extension of *Brady* to provide relief if a police officer makes a false statement to a prosecutor by arguing that an officer is 'suppressing' evidence of the truth by making the false statement. This court has already foreclosed this extension.

*Id.*

Plaintiff criticizes defendants' reliance on *Gauger* and has misconstrued the holdings of those district court cases which he claims are gospel on this issue. As explained above, *Gauger* is directly on point and none of the cases plaintiff cites stand for the proposition that the police

5

have a *Brady* obligation to a criminal defendant to inform him that they tortured his confession out of him.

The constitutional right *Brady* was meant to protect is a criminal defendant's ability to adequately defend himself at trial, thus, where a plaintiff is already aware of the alleged misconduct, he is not being prevented from adequately defending himself against the criminal charges. *See Newsome*, 256 F.3d at 752; Gauger, 349 F.3d at 360; *See also Ienco v. Angarone et. al.,* 429 F.3d 680, 683 (2005). "Police come within the ambit of *Brady* when the conceal exculpatory evidence from the prosecutor, but no tort has been perpetrated unless the evidence was unknown to the accused." *Andrews v. Burge*, 660 F.Supp.2d 868, 880 (N.D. Ill. 2009) (*citing United States v. Lee*, 399 F.3d 864, 865 (7th Cir. 2005)).

In *Andrews*, the plaintiff alleged that defendant officers inflicted pain on him "in order to extract a confession and coach him on what to confess." *Id*. at 880. The plaintiff also alleged "Burge, the immediate commander of the violent crimes unit, encouraged and sanctioned these methods." *Id*. The Court explained that when the "police beat a false (or even a true) confession is exculpatory evidence," but the plaintiff knew all of this an raised it at trial; therefore, the defendant officers are not constitutionally liable for testifying falsely or for violating the rule in Brady. *Id*. *citing Briscoe v. LaHue*, 103 S.Ct. 1108 (1983); *Sornberger,* 434 F.3d at 1028-29; *see also, Harris,* 489 F.3d at 1015, Gauger, 349 F.3d at 360.

Here, like *Gauger*, *Sornberger*, and *Harris,* plaintiff was aware of the misconduct he alleges; not only prior to his trial, but at the time the alleged misconduct was committed. Thus, like *Gauger*, plaintiff's due process claim must fail. But also like *Gauger*, plaintiff's remedy is a malicious prosecution claim under state law. *Newsome*, 256 F.3d at 751. (Where a state law remedy exists, due process of law is afforded by the opportunity to pursue that claim in state court).

**C.     There Is No Such Thing As A Federal Malicious Prosecution Claim.**

While plaintiff certainly has a viable state law malicious prosecution claim that will survive, even plaintiff admits the Seventh Circuit bars him from proceeding on a federal malicious prosecution claim. (Pl.'s Resp. at p. 16 FN7). Instead of using the term "federal malicious prosecution claim" he argues that this Court should recognize a (federal malicious prosecution) claim based on alleged fabricated evidence outside the ambit of *Brady*. He calls this a "wrongful conviction claim." To support his theory, plaintiff is forced to search out cases from

6

other circuits (Pl.'s Resp. at p. 12 FN6), because the Seventh Circuit does not support plaintiff's plead claim. Quite the contrary, it is well established in this Circuit that unless material exculpatory evidence was withheld from a plaintiff, he cannot sustain a federal claim simply based on fabrication of evidence. *McCann v. Mangialardi*, 337 F3d 782, 786 (7th Cir. 2003); *Johnson v. Saville*, 575 F.3d 656, 663 (7th Cir. 2009), citing *Newsome,* 256 F.3d at 752; *Parish v. City of Chicago*, 594 F.3d 551, 552 (7th Cir. 2010) ("Seventh Circuit precedent does not permit an action for malicious prosecution under Section 1983 if a state remedy exists."); *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009).

Defendants' opening brief addressed this point at length. Plaintiff fails to even explain (or even cite in his 5 page table of authorities) why the Supreme Court's decision in *Albright v. Oliver* 510 U.S. 266, 275 (1994) or the recent Seventh Circuit decision in *Brooks* do not doom his due process (federal malicious prosecution) claim. Plaintiff does not address it – because there is nothing he can say. Plaintiff hopes this Court will just ignore the Supreme Court and Seventh Circuit and trust plaintiff's spin on the law.

Plaintiff cites several Supreme Court criminal cases for the general discussion of due process. Plaintiff misses the point. The issue is whether plaintiff is entitled to a civil due process claim based on his allegation that defendants fabricated evidence outside the ambit of *Brady*. According to *Albright, Brooks, Newsome, McCann, Ienco, Gauger, Sornberger* and others the answer is no.

Contrary to plaintiff's assertion, (Pl.'s Resp. at p. 12) *McCann* is on point. McCann, like Tillman, claimed his due process rights were violated by the police "purposefully creating false evidence for the purpose of procuring [his] criminal conviction and imprisonment." *McCann,* 337 F.3d at 786. Judge Manion, writing for the court, rejected McCann's attempt to couch this claim as due process "because it is nothing more than a recast of his Fourth Amendment false arrest claim....in the guise of a substantive (rather than procedural) due process violation." *McCann,* 337 F.3d at 786. Continuing, as discussed above, "[t]he Supreme Court has made it clear that a substantive due process claim may not be maintained when a specific constitutional provision (here the Fourth Amendment) protects the right allegedly violated." *Id*. Here, Tillman claims the same thing - defendants fabricated evidence against him - a "recast of his Fourth Amendment false arrest claim" *Id.* at 786*,* which in this case Tillman concedes is time-barred.

The *McCann* court did not stop there and mirroring Justice Kennedy's concurrence in *Albright*, further dismissed McCann's substantive due process claim "to the extent [he] maintains that [defendant] denied him due process by causing him to suffer "[a] deprivation of liberty from a prosecution and a contrived conviction ... deliberately obtained from the use of false evidence, his claim is, in essence, one for malicious prosecution, rather than a due process violation." *Id.* at 786. As defendants have explained,. The Seventh Circuit really put it best:

> In sum, McCann cannot do an end run around the foregoing precedent by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment.

*Id.* at 786; *See also Hughes v. City of Chicago* 673 F.Supp.2d 641, 647 (N.D. Ill. 2009)

Tillman, like McCann, is trying to characterize his allegations into a "hybrid substantive due process claim" which he calls a "wrongful conviction claim." Plaintiff's allegations are premised on his claim that defendants coerced his confession and fabricated the circumstances of the confession. Either these allegations fall under the Fifth Amendment or state law malicious prosecution.

This is precisely the reason the same argument recently set forth by the same plaintiff's counsel was rejected by Judge Conlon, *Miller v. Whalen*, 08 C 773, 2009 WL 2436593, at * 9 (N.D.Ill. Aug. 6, 2009) and again by Judge Castillo, *Walden*, 2010 WL 5168789, at * 21. Plaintiff primarily latches onto *Dominguez v. Hendley*, 545 F.3d 585 (7th Cir. 2008) for this proposition.

Plaintiff's reliance on *Dominguez* is misplaced. In *Dominguez*, the Seventh Circuit merely affirmed a jury verdict where defense counsel previously stipulated to bad law. The case did not establish a fabrication of evidence claim, separate and distinct from *Brady* or the Fourth Amendment. *Dominguez* also does not abrogate, *Newsome, Gauger, Ienco,* and *Sornberger*, all of which reject independent constitutional claims for fabrication of evidence absent a true *Brady* violation. Nothing in the opinion rejects those cases or their holdings. Plaintiff's entire basis to assert some distinct "fabrication of evidence claim" relies on the *Domiguez* jury instructions quoted by the Seventh Circuit in dicta. However, the defense counsel agreed to that substantive jury instruction submitted. (*See* October 13, 2006 Court Transcript in *Domiguez v. Hendley* 04 C 2907 at Pgs. 1638 - 1640 attached hereto as Exhibit A). In fact, as was quite clear after the trial, the defense team regretted their decisions (and the client regretted their choice of counsel), but

8

was forced to live with them on appeal. (*See* December 21, 2007 Court Transcript in *Domiguez v. Hendley* 04 C 2907 at Pgs. 2-6 and 16-18 attached hereto as Exhibit B). Judge Shadur, who presided at the trial, still dealing with the jury instructions over a year later, coined it as follows: "Unlike Contracts 101 in law school, silence connotes acquiescence." (*See* January 11, 2008 Court Transcript in *Domiguez v. Hendley* 04 C 2907 at Pg. 12 attached hereto as Exhibit C).

Given the unique circumstances surrounding those jury instructions, the *Dominquez* decision can hardly stand for the proposition plaintiff hopes for here. Even the Seventh Circuit in *Domiguez* does not analyze the validity of such a proposed claim and in no way does it set forth a new claim separate and distinct from *Brady*. In reality, this case better stands for the position that if the parties agree to proceed under bad law – bad law governs the case.

The Seventh Circuit prohibited McCann from pursing his allegations, as a due process claim outside the ambit of *Brady* and this Court should prohibit Tillman from doing the same.

## II. PLAINTIFF'S FIFTH AMENDMENT CLAIM IS NOT ACTIONABLE.

### A. Plaintiff Never Confessed; By Definition His Fifth Amendment Claim Fails.

Plaintiff's response is unclear as to whether plaintiff is even alleging he confessed as a result of coercion, a necessary predicate for a Fifth Amendment claim. Plaintiff characterizes defendant' argument on this issue as "disingenuous." (Pl.'s Resp. at p. 16). The only disingenuous action on this issue is plaintiff's refusal to make known to the Court whether plaintiff actually confessed to the murder as a result of coercion. Why is that such a hard question to answer? In his complaint, plaintiff alleged that as a result of the torture, he "ultimately agreed to cooperate and, *according to the testimony of Defendant Yucaitis*, made oral admissions concerning his involvement in the crime." (Pl.'s Comp. at ¶ 29). Plaintiff also is adamant defendants did *not* obtain a "false written statement" from him. (Compl. ¶¶29, 32).

In his response, plaintiff directs this Court to cryptic and legalese allegations in his complaint to support a new theory that "defendants both coerced from him and fabricated oral admissions." (Pl.'s Resp. at p. 16). Does that make sense? Either he did or he did not confess. Plaintiff refuses to take a position on this one. If he did not confess, plaintiff cannot claim his Fifth Amendment rights were violated. A critical component to a coerced confession claim is a *confession*. *Sornberger,* 434 F.3d at 1025. (Fifth Amendment claim requires (1) "*Miranda*-infirm statements" and that they (2) be admitted against a criminal defendant at a criminal proceeding). As discussed above, any allegation that plaintiff's confession was fabricated, in that the

defendants testified that plaintiff confessed when in fact he did not, falls within the purview of plaintiff's state law malicious prosecution claim. *Newsome*, 256 F.3d at 751. Accordingly, as plaintiff has not plead that he actually confessed – as a result of coercion – his Fifth Amendment claim should be dismissed.

Even giving plaintiff the benefit of his "disingenuous" pleading approach, his Fifth Amendment claim is still time-barred.

### B. *Heck* Does Not Toll Plaintiff's Fifth Amendment Claim.

As the Supreme Court explained, *Heck's* delayed accrual rule does not apply until there is a conviction and has no applicability to a possible *future conviction*. *Wallace v. Kato* 127 S.Ct. 1091, 1097-98 (2007). That is because courts should not be forced to speculate about whether a prosecution will be brought, or whether it will result in a conviction, at a time when it can hardly be known what evidence prosecutors will have and whether particular pieces of evidence will be crucial to a conviction. *Id.* at 1098. By definition, at the time the alleged involuntary confession was used against Tillman (either as evidence to detain him at the probable cause/bond hearing, or during the pre-trial motion to suppress the confession) there was no extant conviction. And it was precisely at the time that the constitutional tort was complete and plaintiff's Fifth Amendment claim accrued. *Sornberger,* 434 F.3d at 1027.

In *Sornberger,* the Seventh Circuit held that a plaintiff's cause of action for a coerced confession accrued at the time the confession was first introduced as evidence of a plaintiff's guilt at a criminal proceeding. 434 F.3d at 1027. *See also Chavez v. Martinez*, 538 U.S. 760, 763-65 (2003)(Section 1983 claim for coerced confession actionable only when coerced statements are introduced against the criminal defendant turned plaintiff). The constitutional tort was complete at that time and "[the] use of [plaintiff's] confession…without *Miranda* warnings, allows a suit for damages under Section 1983." *Sornberger,* 434 F.3d at 1027. The constitutional tort was complete and his cause of action accrued at that time. *Id.* By definition, there was no conviction at that time. Indeed, at the time the confession was introduced against the plaintiff, Tillman did not know, and could not know, whether there would be a conviction, as to decide whether or not *Heck* would toll his claim. As explained by the Supreme Court, Tillman had no basis to wait for a conviction before he filed his lawsuit. Here is what the Court said:

> What petitioner seeks, in other words, is the adoption of a principle that goes well beyond *Heck:* that an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set

aside. The impracticality of such a rule should be obvious. In an action for false arrest it would require the plaintiff (and if he brings suit promptly, the court) to speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the pending civil action will impugn that verdict [] all this at a time when it can hardly be known what evidence the prosecution has in its possession.....If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.

*Wallace*, 127 S.Ct. at 1097-98.

As such, the Supreme Court held that once a criminal defendant's potential civil cause of action accrues, the clock begins to tick and he must file and not wait for the disposition of his criminal proceeding. *Id. Heck* will not help the plaintiff. *Id.* Based on this reasoning, Judge Andersen and Magistrate Judge Shenkier held Fifth Amendment claims were time-barred when brought over two years after the date the confessions were introduced in a criminal proceeding[3]. *See Lanza v. City of Chicago*, 08 C 5103, 2009 WL 1543680, *3 (N.D. Ill. June 2, 2009) (Relying on *Wallace*, Court held plaintiff was on notice of his coerced confession being used against him at a 2002 suppression hearing, making his 2008 Fifth Amendment civil claim untimely); *See also Hudson v. Cassidy*, 05 C 5623, 2006 WL 3524420, *5 (N.D. Ill. Dec. 5, 2006)(Plaintiff's "[F]ifth [A]mendment claim resulting from an attempt to use [his] confession accrued as early as January 2000. This suit was filed nearly six years after that date, on September 29, 2005," Therefore, the claim is time-barred).

Tillman attempts to avoid this result by arguing that his Fifth Amendment right against self-incrimination is akin to the *Brady*-based trial right espoused in *Newsome,* and therefore, the accrual of this Fifth Amendment claim was deferred until this conviction was invalidated in 2009. This argument is flawed. Fundamentally, it ignores that the Fifth Amendment right

---

[3] *Contra. Walden v. City of Chicago* 2010 WL 5168789 (N.D.Ill December 21, 2010). In *Walden,* Judge Castillo denied defendant's motion on this point. Judge Castillo dismissed defendant's reliance on *Lanza* and *Hudson* for the reason that both of the cases resulted in a dismissal of charges as opposed to a conviction. Defendants respectfully disagree with the court's reasoning. The dismissal of the charges makes no difference to the accrual date. The Supreme Court explained that an "adoption of a principle that….an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside" is "bizarre." *Wallace,* 127 S.Ct. at 1097-98. Accordingly, conviction or not, a Fifth Amendment claim accrues at the time the violation occurs – as opposed to some undetermined time in the future. *Id.*

11

against self-incrimination does not require a conviction to be actionable. *Sornberger,* 434 F.3d at 1027.

The previously decided lower-court cases cited by Tillman reaching a different result are abrogated by the Supreme Court's decision in *Wallace*. As for *Hill* and *Andrews*[4], which are post *Wallace*, those decisions do not address why the Supreme Court's analysis of *Heck* would treat a Fifth Amendment claim any different than a Fourth Amendment claim. In *Hill v. City of Chicago*, Judge St. Eve writes, that "[d]efendants' [accrual] argument however, conflicts with the Supreme Court's decision in *Heck*." 06 C 6772, 2007 WL 1424211 (N.D. Ill. May 10, 2007). Defendants respectfully disagree and the Supreme Court's decision in *Wallace* explains why defendants' accrual argument is consistent with *Heck*. Here is *Hill's* entire discussion on plaintiff's Fifth Amendment claim:

> In Count IV, Hill and Young allege that Defendants violated their Fifth Amendment rights by failing to provide *Miranda* warnings and consequently using their coerced confessions as evidence at trial. *See Sornberger v. City of Knoxville, Ill.,* 434 F.3d 1006, 1024 (7th Cir.2006). Defendants argue that Plaintiffs' coerced confession claims under the Fifth Amendment are time-barred because their claims accrued at the time of the alleged coerced confessions in March of 1992.
>
> Defendants' argument, however, conflicts with the Supreme Court's decision in *Heck. See Wallace,* 440 F.3d at 425 (constitutional claim cannot be brought until defendants' convictions nullified); *Ienco,* 429 F.3d at 685 ("constitutional claim cannot be filed until an underlying criminal conviction is nullified"). Here, Plaintiffs' criminal convictions were vacated in January of 2005. Accordingly, their coerced confessions claims accrued less than two years ago, and thus Count IV is timely.

2007 WL 1424211 at *3

*Hill* does not address the Supreme Court's opinion in *Wallace* and their analysis of *Heck* in this context. As explained above, the Supreme Court is clear that such an extension of *Heck* is "bizarre" and one that they are "not disposed to embrace." *Wallace,* 127 S.Ct. at 1097-98. In fact, [t]he impracticality of such a [an extension of *Heck*] should be obvious." *Id.* While the Supreme Court in *Wallace* did not address a Fifth Amendment claim directly, its analysis leaves no room for dispute: *Heck* does not toll a claim that would potentially "impugn *an anticipated*

---

[4] Defense counsel did not raise this argument in *Andrews v. Burge,* 660 F.Supp.2d 868 (N.D. Ill. 2009) and the Court did not analyze the Supreme Court's decision in *Wallace* or its explanation of the application of *Heck* in the Fifth Amendment context.

12

*future conviction.*" *Id.* The proper course of conduct, to preserve a Fifth Amendment claim is to file when the constitutional violation occurs, *Sornberger,* 434 F.3d at 1027, and "it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Wallace,* 127 S.Ct. at 1097-98

In fact, the Supreme Court's reference (in their analysis of *Heck* quoted above) of "*or files any other claim* related to rulings that will likely be made in a pending or anticipated criminal trial,*" Wallace*, 127 S.Ct. at 1097-98, suggests their holding encompasses all claims, including Fifth Amendment claims, that accrue during the course of criminal proceeding. Therefore, since plaintiff did file his lawsuit with two years on the use of his confession in his criminal case, plaintiff's Fifth Amendment claim should be dismissed.

### III. PLAINTIFF'S STATE LAW FALSE IMPRISONMENT AND FALSE ARREST CLAIMS ARE TIME BARRED.

Plaintiff does not challenge the well-established statue of limitations in a false arrest and imprisonment case. Instead, he asserts that his state law claims – which mirror his self admitted time-barred claims – have a different accrual date. That makes no sense and is contrary to the Supreme Court's opinion on this matter:

> False arrest and false imprisonment overlap; the former is a species of the latter. "Every confinement of the person is an imprisonment, whether it be in a common prison or in a private house, or in the stocks, or even by forcibly detaining one in the public streets; and when a man is lawfully in a house, it is imprisonment to prevent him from leaving the room in which he is." We shall thus refer to the two torts together as false imprisonment…false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*-when, for example, he is bound over by a magistrate or arraigned on charges.

*Wallace*, 127 S.Ct. at 1096.

Here, plaintiff's false arrest and imprisonment claim, whether or state or federal, accrued when plaintiff was arrested and detained in 1986. *See Nat'l Casual Co. v. McFatridge*, 604 F.3d 335, 344 (7th Cir. 2010)(state law false imprisonment and Section 1983 false arrest claims both "suffer[ed] the same fate" in that both claims "accrued when authorities got a warrant for his arrest."); *Smith v. Boudreau*, 366 Ill. App. 3d 958, 968, 852 N.E.2d 433, 442 (2006)("[The Seventh Circuit's decision in] *Wallace* supports the conclusion that Smith's state and federal claims accrued at the time of the alleged infractions."). Once the tort of false imprisonment ends,

plaintiff can still seek redress for damages (time in custody post arraignment) by way of a state law malicious prosecution claim – which is pending and not a subject of this motion. Accordingly, plaintiff's false arrest and imprisonment claims should be dismissed as time barred.

## IV. PLAINTIFF CONSPIRACY CLAIM FAILS.

The Seventh Circuit has held that absent an underlying constitutional violation a plaintiff is precluded from the possibility of succeeding on a conspiracy claim. *Indianapolis v. Minority Contractors Ass'n v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999). Accordingly, if this Court dismisses plaintiff's Fifth and Fourteenth Amendment claims, the Court should dismiss plaintiff's federal conspiracy claim. In any event, plaintiff's conspiracy claim fails on its own as well.

Plaintiff fails to adequately plead his general section 1983 conspiracy claim and his reliance on pre-*Twombly* and *Iqbal* standards is unavailing. "Even before the Supreme Court's new pleading rule….conspiracy allegations were often held to a higher standard than other allegations; mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough." *Cooney v. Rossiter*, 583 F.3d 967, 972 (7th Cir. 2009). Post *Iqbal,* a conspiracy claim that was "bereft of any suggestion, beyond a bare conclusion, that the ... defendants were leagued in a conspiracy" was "not enough" to survive a Fed.R.Civ.P. 12(b)(6) challenge. *Cooney,* 583 F.3d at 971; *See also Mirbeau of Geneva Lake, LLC v. City of Lake Geneva,* 2010 WL 4260085, 6 (E.D.Wis. 2010). "[T]he plaintiff must meet a high standard of plausibility" when alleging "a vast, encompassing conspiracy." *Cooney,* 583 F.3d at 971. Without any facts, plaintiff makes it impossible to determine the plausibility of a wide-ranging general conspiracy. Judge Zagel dismissed a similar conspiracy claim in *Andrews* explaining:

> Indiscriminately incorporating every paragraph of every count in other counts, particularly the catch-all counts which usually appear toward the end of the complaint, can result, as it does here, in a complaint that does not tell some of the defendants why they are liable. The structure of this complaint is typical of the problems created by amorphous pleading. There are very specific allegations about what certain named police officers and a prosecutor did with respect to Andrews. The further up the chain of command the complaint goes, the more vague are the grounds for individual liability. It does not help to make equally general allegations that all defendants conspired with all other defendants and everything alleged against one is alleged against all. <u>In a simpler case, a general conspiracy claim is adequate but not here.</u> [emphasis added]

*Andrews,* 660 F.Supp.2d at 879 -880.

Here, as in *Andrews*, plaintiff merely alleges a general conspiracy claim with catch-all counts with the specific allegations in the forefront of the complaint. Plaintiff claims there are "ample allegations regarding the nature, dates, and participants in a number of overt acts in furtherance of the conspiracy." (Pl.'s Resp. at p. 10). Plaintiff gives a number of examples – however, those examples only allege certain acts against certain individuals, some of which are not the officer defendants. *(Id.* at 11). Further the approximate timeframe is so broad as to fail to put defendants on notice. (*See* Pl.'s Compl. at ¶¶ 61, 62, 65). The general allegations here, as in *Andrews*, are inadequate and should be dismissed[5].

Plaintiff has not alleged in his complaint a "meeting of the minds" by Defendant Officers. Plaintiff fails to make factual allegations that Defendant Officers conspired to deprive him his rights a privilege because he is African-American. *See Amundsen v. Chicago Park District*, 218 F.3d 712, 718 (7th Cir. 2000) (*citing Kunik v. Racine County, Wisconsin*, 946 F.2d 1574, 1580 (7th Cir. 1991)). Again, to the extent the § 1985 conspiracy claim fails, Plaintiff § 1986 claim fails also. *Rhodes v. Mabus*, 676 F.Supp.755, 760 (S.D. Miss 1987).

## CONCLUSION

For the reasons explained, this Honorable Court should dismiss plaintiff's complaint and remand his state law claims to the Circuit Court of Cook County.

Respectfully submitted,

/s/ Avi T. Kamionski
Avi T. Kamionski

Andrew M. Hale
Avi T. Kamionski
Helena Wright
Andrew M. Hale & Associates, LLC
53 West Jackson Blvd., Suite 1800
Chicago, IL 60604
(312) 870-6928

---

[5] Similarly, plaintiff fails to plead a proper Section 1985 conspiracy claim. Plaintiff argues that to state a § 1985 claim he must only allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." (Pl.'s Resp. at p. 20) In the Seventh Circuit, a plaintiff must demonstrate four elements to establish a claim under 42 U.S.C. § 1985(3). *Indianapolis Minority Contractors Ass'n. Inc. v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999). A plaintiff must establish a conspiracy, a purpose of depriving a class of persons of equal protection of the laws, an act in furtherance of the conspiracy, and an injury to his person or a deprivation of any right or privilege. *Id*. "In § 1985 cases, vague and conclusory allegations of a conspiracy state no claim upon which relief can be granted." *Christian v. Simpson*, 10 C 155 TLS, 2010 WL 2539431 at * 2 (N.D. Ind. June 6, 2010) (Springmann, J.) (*citing Amundsen v. Chicago Park District*, 218 F.3d 712, 718 (7th Cir. 2000)).

**CERTIFICATE OF SERVICE**

    I hereby certify that on December 30, 2010, I electronically filed the foregoing **DEFENDANT OFFICERS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to all counsel of record.

                                                      /s/ Avi T. Kamionski
                                                      Avi T. Kamionski