# EXHIBIT A

07-1004    07-1005

FILED
1563

CLERK'S FILE COPY

JUL 3 1 2007    NR

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED
AUG 1 2007

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

S. ALEJANDRO DOMINGUEZ,              ) DOCKET NO. 04 C 2907
                                     )
                        Plaintiff,   )
                                     )
    vs.                              )
                                     )
PAUL HENDLEY, et al.,                ) Chicago, Illinois
                                     ) October 13, 2006
                     Defendants.     ) 10:00 o'clock a.m.


        TRANSCRIPT OF PROCEEDINGS BEFORE THE HONORABLE
            MILTON I. SHADUR, Judge and a jury

APPEARANCES:

U.S.C.A. - 7th Circuit
FILED

For the Plaintiff:
                    MR. JON LOEVY,
                    MR. MARK REYES and          AUG 0 2 2007  DW
                    MS. DANIELLE LOEVY          GINO J. AGNELLO
                                                    CLERK
For the Defendants:
                    MR. MICHAEL K. NOONAN       DOC.#
                    MS. ELIZABETH KNIGHT and
                    MR. JONATHAN CIFONELLI


                    JESSE ANDREWS
        Official Court Reporter - U. S. District Court
                219 S. Dearborn Street
                Chicago, Illinois  60604
                    (312) 435-6899

206-8

1638

1    one should be worded used an unnecessarily suggestive

2    identification procedure that resulted in an unreliable

3    identification, period.  And then it's modified lower by in

4    which no fair trial can take place.

5            MS. KNIGHT:  I agree that fair trial is the issue.

6            THE COURT:  I do, too.  I'm not quarreling with that.

7    Let me try again for a second.

8        (Brief pause)

9            THE COURT:  As I would get this then, what you are

10   essentially saying is that it would read, Dominguez must -- you

11   know, to succeed and so on -- Dominguez must prove by a

12   preponderance of the evidence that Hendley did one of the

13   following things.  Okay.  The first one is the unnecessarily

14   suggestive identification procedure.

15           MR. LOEVY:  Period.

16           THE COURT:  Wait.  The next is, withheld material

17   evidence.  And then having said those, then saying instead of

18   thus causing, in any event thus causing a situation in which no

19   fair trial could take place.

20           MR. LOEVY:  Right.  Although you've captured created

21   false evidence, too.

22           THE COURT:  That's what I'm saying, you have to have

23   all three.

24           MR. LOEVY:  Yes.  That's the way we think it should

25   go, your Honor.  That's the claim we would like to present to

1639

1   the jury.

2           THE COURT:  Everybody understand that one now?

3           MS. KNIGHT:  Is this created false evidence that was

4   introduced at trial?

5           MR. NOONAN:  Is the created false evidence the

6   identification?

7           MR. LOEVY:  It could be, yes.  It could be the

8   identification.  It could be police reports.  [The Seventh

9   Circuit creation of false police reports qualified as false

10  evidence.  You have a due process right not to have false

11  evidence created.

12          THE COURT:  That's true.  Okay.  So basically then

13  what's being suggested is that it's, did any of the following

14  things -- and there would be three items -- make it -- well,

15  no, let's say did any or all of the following things.  Then we

16  don't have to have both down at the bottom.

17          MS. KNIGHT:  All right.

18          THE COURT:  Did any or all of the following things:

19  1, used the unnecessarily suggestive identification that

20  resulted in the unreliable identification or 2, withheld

21  material evidence and so on and so on or 3, created false

22  evidence and so on and so on.  And then back flush, in any

23  event thus causing a situation in which no fair trial could

24  take place.  Basically what you're saying is the fair trial is

25  the key or the absence of a fair trial is the key, and that

1640

1   they have to find one or all of these items.  That's fine with
2   me.
3          MR. LOEVY:  That works for us.
4          MS. KNIGHT:  Except that I don't believe there is
5   evidence of these things to send this to the jury.
6          THE COURT:  Well, I understand that's your view but,
7   you know, the jury may draw inferences from what's there.
8          MS. KNIGHT:  I'm still inquiring as to number three,
9   is false evidence introduced at trial or somewhere else?
10         MR. NOONAN:  I think there has to be some evidence in
11  order to get an issue instruction, created false evidence or
12  statements.
13         MR. LOEVY:  Well, the police reports are false.
14         MS. KNIGHT:  If -- they weren't introduced at the
15  criminal trial.
16         MR. LOEVY:  Isn't the Jones case -- the Jones case
17  said created false evidence that induced the prosecutor
18  actually.  I guess there is some question if that's still good
19  law.  But if that's the case I would cite in the summary
20  judgment briefs about creating false evidence, they said
21  created false police reports.
22         MS. KNIGHT:  Well, I think I have some Brady
23  instruction here, but I have lost it for the moment.
24         THE COURT:  All right.  Well, before we go farther,
25  then let's deal with this one.  So it would -- let me have

1641

1     *Wendy come in and I'll have her type the thing up and it will*

2     *be better for all of us.*

3         *(Brief pause)*

4         *THE COURT: Okay. Now in that form that means that*

5     *we would continue to give the instructions that we have talked*

6     *about in terms of the standards for identification because*

7     *those are part of that. The ones that we had discussed.*

8         *MS. KNIGHT: I don't know, is there a number on that*

9     *because I --*

10         *MR. REYES: Plaintiff's I, J and K, right?*

11         *THE COURT: Yeah.*

12         *MS. KNIGHT: Plaintiff's I, J and K?*

13         *THE COURT: Right.*

14         *MS. KNIGHT: Did I object to those? I have to go*

15     *back and find them, Judge. I can't keep numbers in my head.*

16     *Well, if I objected, and I probably still do.*

17         *THE COURT: Well, these are all taken, as we talked*

18     *about, from case law that defines what constitutes*

19     *unnecessarily suggestive identification and the procedures*

20     *involved.*

21         *MS. KNIGHT: Oh, right. I object.*

22         *MR. NOONAN: And the procedure after you made that*

23     *determination?*

24         *THE COURT: Yeah, right.*

25         *MR. NOONAN: Because there were those five on that,*

# EXHIBIT B

07 - 1004
07 - 1005

DOCKETED
JAN 2 3 2009

07 - 3020  CLERK'S FILE COPY

1

1

2                    IN   STATES DISTRICT COURT
3              NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION
4

S. ALEJANDRO DOMINGUEZ,           ) DOCKET NO. 04 C 2907
5                                 )
                      Plaintiff,)
6                                 )
     vs.                          )
7                                 )
PAUL HENDLEY, et al.,             ) Chicago, Illinois
8                                 ) December 21, 2007
                  Defendants.) 9:00 o'clock a.m.
9

10

11

12        TRANSCRIPT OF PROCEEDINGS BEFORE THE HONORABLE
13                MILTON I. SHADUR, JUDGE

APPEARANCES:                           U.S.C.A. — 7th Circuit
14                                        FILED
For the Plaintiff:
15                MR. JON LOEVY             JAN 2 4 2008 SK

16                                        GINO J. AGNELLO
                                              CLERK
17 For the Defendants:
18                MR. STEVEN D. PEARSON,
                  MR. ERIC E. NEWMAN and
19                MR. DANIEL FIELD

20                JESSE ANDREWS
21    Official Court Reporter - U. S. District Court
            219 S. Dearborn Street
22          Chicago, Illinois  60604
               (312) 435-6899        FILED
23        *     *     *     *     *     *
24                                    JAN 2 2 2008
25                                MICHAEL W. DOBBINS
                                CLERK, U.S. DISTRICT COURT

242

2

1          THE CLERK:  04 C 2907, Dominguez vs. Hendley.

2          MR. PEARSON:  Good morning, your Honor.  Steve

3 Pearson and Eric Newman on behalf of Officer Hendley.

4          MR. FIELD:  Daniel Field on behalf of the City.  I

5 don't see anyone from the office of Jon Lovey.

6          THE COURT:  Well, I am not sure.  You know the only

7 reason I think for putting this over was the point that I made

8 about jury instructions, and the fact that the delivery of a

9 package that included everything when virtually all of them

10 were withdrawn as a result of running through the instructions

11 one by one, that the sensible thing to do was to carve it

12 down.  Now have you had chance to do that?

13          MR. PEARSON:  We have tried that.  And we tried that

14 without success, because in our view we have not received the

15 appropriate cooperation from the Lovey firm in that regard.

16 We have prepared a brief, Judge, at this time --

17          THE COURT:  Let me ask you a question for a second.

18 Did you have the instruction conference written up?

19          MR. PEARSON:  Yes.

20          MR. FIELD:  Yes.

21          THE COURT:  Well, why do you need cooperation of the

22 Loevy firm for?  You can read --

23          MR. PEARSON:  Here, Judge.  Because our position

24 with respect to anything that is part of the record as long as

25 it can be authenticated as part of the record --

3

1          THE COURT:  I am sorry.  I really have to differ
2   with you.

3          MR. PEARSON:  I understand, Judge.

4          THE COURT:  Wait a minute.  You know the procedure
5   that I followed, and I am sure I followed there, is I ticked
6   them off one by one.  At each point that there was something
7   in which -- for example, you know the parties delivering two
8   sets of instructions very often they are replicative -- very
9   often what happens is that I would build in a portion of one
10  of the defense instructions into one that had been tendered by
11  the plaintiff, all you have to do is to read that.

12          Now the point is that when somebody says
13  "withdrawn," that's not part of the record.  Somehow you know
14  because those things were simply tendered, and they are
15  tendered tentatively, that's how it works at least in my
16  dealing with jury cases.  So what happens is that people
17  deliver a package, we then go down the line.  And when
18  something is withdrawn it's withdrawn.  It's not then part of
19  the record.

20          That's what -- if somebody had a pleading that was
21  literally withdrawn or a motion that was literally withdrawn,
22  that's not in the record in any case.  And so I am not -- oh,
23  here is Mr. Loevy.

24          MR. LOEVY:  Good morning, your Honor.  John Loevy.
25  It was call for 9:15, I apologize because you have started.

4

1          THE COURT:  Counsel was complaining that you have

2  not been cooperating in connection with this business of

3  carving back the instructions in the manner that I had

4  instructed the last time.   And I have just been telling

5  counsel that unless this -- you know I don't have a total

6  recall obviously of each one of these tendered instructions.

7  But I know that the procedure that was followed was one in

8  which as I would pass on a particular instruction the

9  corresponding one would be withdrawn, and that was on both

10 sides of the coin.   And I was just telling counsel that a

11 withdraw tendered instruction is not properly part of the

12 record.

13         MR. LOEVY:  Absolutely, your Honor.   And furthermore

14 as your Honor may recall, we had agreed on instructions.   You

15 used the term "horse trading" was my recollection at the time.

16 The critical instruction was the product of an agreement by

17 the of the day.   We compromised on some of our language and

18 it was submitted by agreement.   There were no alternatives

19 proposed on the issue instructions.

20         MR. PEARSON:  Judge, we have a very practical

21 problem that your Honor --

22         THE COURT:  Listen.  You had your practical problem

23 the other day.  I told you what to do, and apparently it

24 didn't get done.  Now you know you can't -- one thing that is

25 inappropriate is to deliver something to the Court of Appeals

5

1    that's misleading.  Because I commented the last time that all

2    too often you know we get volunteered things from the Court of

3    Appeals that are for lack of a better term are either dicta or

4    worse, and that gets invited by something along these lines.

5            I mean you know I can just visualize a comment

6    somewhere in the Court of Appeals, "Well, how come this didn't

7    get done?", when in fact the reason for something was that

8    nobody pursued an issue in that fashion, or as Mr. Loevy has

9    said, the result of a particular instructions resulted from

10   the parties having negotiated with each other and coming up

11   with an agreed one.

12           Now I don't think that it's fair to anybody -- and

13   this cuts both ways -- and it's certainly not fair to the

14   Court -- that creates the potential that someone upstairs can

15   make a comment about "How come this didn't get in here," and

16   did that then mislead people.  It's wrong.  And you know I've

17   got to tell you I don't have a lot of patience with your

18   telling me that you are caught between a rock and a hard

19   place.  That was not my doing in terms of when you came in.

20           MR. PEARSON:  Judge, I did not get a chance to

21   finish, and if I could be heard on this, please.

22           THE COURT:  Yes.

23           MR. PEARSON:  My point about a practical problem as

24   you know, neither myself or counsel for the City were here.

25           THE COURT:  I know that.

6

1              MR. PEARSON:  -- for this trial.  There are

2  malpractice claims that are being evaluated by the City.  If

3  we do not pursue these issues, and the law on this issue, with

4  all due respect to your Honor, I know your position, you've

5  made it very clear, but the law as we see it is not that

6  clear.  If we do not pursue this argument it will later be

7  argued that all of these matters should be -- anything that we

8  can authenticate as part of the record needs to go to the

9  Seventh Circuit.  And we have a brief that we would like to

10  submit to have your Honor consider.  Obviously if your Honor

11  disagrees --

12              THE COURT:  Suppose you had put a piece of toilet

13  paper into the thing --

14              MR. PEARSON:  Of course.

15              THE COURT:  -- and it then gets withdrawn.

16              MR. PEARSON:  Of course.

17              THE COURT:  You expect that you are entitled somehow

18  to include that?

19              MR. PEARSON:  Of course not.

20              THE COURT:  Well, that's essentially the equivalent

21  of what happened.

22              MR. PEARSON:  I disagree, Judge.  We had two lawyers

23  at trial that were quibbling amongst themselves on the defense

24  side of this case.

25              THE COURT:  Well, that's their problem in those

16

1          THE COURT:  I want to make sure that Mr. Pearson is

2 paid.  You are not paid, yet, right?

3          MR. PEARSON:  I have been paid the initial $50,000

4 for back payment.  Thank you for asking, your Honor.

5          MR. LOEVY:  We moved quickly from the jury

6 instruction to the exhibits without really finishing what we

7 are doing on the jury instruction, you know, because the

8 discussion shifted.  I think we have an idea --

9          THE COURT:  Jury instructions, I don't understand.

10 If you have any nonfrivolous argument for differing with the

11 point that I made about how the jury instructions operate in

12 which -- I will be glad to take a look at that.  Because it

13 seems to me that the sensible way to go with the jury

14 instruction issue is simply to read the part of the transcript

15 that covers the jury instruction conference.  That would

16 define for you the instructions, both those that ultimately

17 will get given and those on which a party has somehow

18 preserved its issue on an instruction that is not given.  And

19 that's really what it should consist of on that.  I really

20 think there is any room for a difference on that.

21          MR. FIELD:  I wish the record were that clear.  Part

22 of our problem continues to be the conflict between defense

23 counsel on some of these issues.

24          THE COURT:  Well, you know fear of a malpractice

25 action is not something that should drive the engine on appeal

17

1  on substantive matters.

2         MR. PEARSON:  It isn't so much fear of a malpractice

3  action, as much as this is a different situation whereby what

4  steps we take in this litigation by not preserving our

5  arguments can come back to haunt the City later.  And it is

6  the City's claim and Detective Hendley's claim against

7  Mr. Noonan.  And we do not want to do anything that would

8  provide ammunition to a defense counsel in that context,

9  arguing that somehow the issue did not get properly presented

10 to the Court of Appeals.

11        MR. LOEVY:  I think the Court has properly

12 recognized the record is what it is.  What they preserved, the

13 preserved, what they didn't, they didn't.  You can't come in a

14 year later and say, "Here are 50 jury instructions.  We would

15 like the record to reflect they were all preserved," because

16 they weren't all preserved.

17        THE COURT:  I've got to tell you, you've lost me on

18 that, and you are really mixing two things together.  You know

19 lawyers ought to be concerned about potential malpractice they

20 might be, because remember that the place to do that is -- for

21 example, this question of saying, "Well, what they should have

22 done is to continue to insist on defendant's Jury Instruction

23 No. 7."  The place to do that and for that to be part of the

24 record is in the malpractice action, not in this one.  And

25 somehow you just don't seem to be registering that.

18

1    MR. PEARSON:  Judge, I have no intention of making
2 any frivolous arguments, nor have I ever.

3    THE COURT:  You are approaching it.  But anyway if
4 you want to tender your brief, I will look at it.  I don't
5 know what the issues are frankly.  Tender your brief.

6    MR. PEARSON:  We will be prepared to file that
7 today, your Honor.

8    THE COURT:  Okay.

9    MR. LOEVY:  We haven't seen it.  I don't know if
10 your Honor wants a response.

11    THE COURT:  All right.  I don't know either.  Why
12 don't you come in after you have had a chance to digest it or
13 find it indigestible and we sell see about setting up a
14 schedule.

15    MR. FIELD:  Judge, as we do proceed up to the top
16 floor, can we assume then any exhibit for which there is in
17 Mr. Newman's log a page number in the record it will be in the
18 supplemental record?

19    THE COURT:  I assume, unless the nature of the
20 reference is one that --

21    MR. FIELD:  Where it was refused, and I don't
22 believe that's the case on any of them.

23    THE COURT:  No.  Obviously can't totally recall on
24 that.  But certainly that's exactly right.  That should be the
25 approach taken in terms of identifying the exhibits that would

19

1  constitute part of the record.

2        MR. LOEVY:  That's what we are prepared to continue

3  on.

4        THE COURT:  Yes.  So do that.

5        MR. PEARSON:  Thank you, your Honor.

6     (WHICH WERE ALL OF THE PROCEEDINGS HAD AT THE HEARING OF
       THE ABOVE-ENTITLED CAUSE ON THE DAY AND DATE AFORESAID.)

7

8               C E R T I F I C A T E

9  I HEREBY CERTIFY that the foregoing is a true and correct
    transcript from the report of proceedings in the
10  above-entitled cause.

11  JESSE ANDREWS, CSR
    OFFICIAL COURT REPORTER
12  UNITED STATES DISTRICT COURT
    NORTHERN DISTRICT OF ILLINOIS
13  EASTERN DIVISION
    DATED: December 27, 2007

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT C

07-3030

## CLERK'S FILE COPY

DOCKETED

JAN 1 7 2008

1

2          IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
3                     EASTERN DIVISION

4

5   S. ALEJANDRO DOMINGUEZ,            ) DOCKET NO. 04 C 2907
                                       )
              Plaintiff,)
6                                      )
7       vs.                            )
                                       )
    PAUL HENDLEY, et al.,              ) Chicago, Illinois
8                                      ) January 11, 2008
              Defendants.) 9:00 o'clock a.m.
9

10

11

12      TRANSCRIPT OF PROCEEDINGS BEFORE THE HONORABLE
                MILTON I. SHADUR, Judge
13

    APPEARANCES:
14
    For the Plaintiff:                      F I L E D
15              MR. JON LOEVY

16                                          JAN 1 4 2008

17  For the Defendants:                MICHAEL W. DOBBINS
                MR. DANIEL FIELD and    CLERK, U.S. DISTRICT COURT
18              MR. ERIC NEWMAN

19
                JESSE ANDREWS
20      Official Court Reporter - U. S. District Court
                219 S. Dearborn Street          U.S.C.A. — 7th Circuit
21              Chicago, Illinois  60604        F I L E D
                   (312) 435-6899
22                                              JAN 1 8 2008    DW
23          *    *    *    *    *    *      GINO J. AGNELLO
                                                CLERK
24                                          DOC. #

25

1        THE CLERK:  06 C 6885, Hendley vs. the City of

2   Waukegan.

3        [All of the hearing actually dealt with the ealier

4   case, 04 C 2907, Dominguez vs. Hendley].

5        MR. NEWMAN:  Good morning, your Honor.  Eric Newman

6   on behalf of Paul Hendley.

7        MR. FIELD:  Daniel Field for the City.

8        MR. LOEVY:  Good morning, your Honor.  Jon Loevy for

9   Alejandro Dominguez.

10       MR. FIELD:  Judge, the first issue is the letter of

11  credit.  As I told you one of the last times we were here, we

12  actually got a draft of one from the bank in early December,

13  which I e-mailed to Mr. Loevy and Mr.  Pearson's office to

14  solicit comments from them on it.  Another attorney in Loevy &

15  Loevy and I discussed this matter on Wednesday.  He had been

16  in contact with the District Court's Clerk's Office and got

17  some helpful information that's already been sent to the bank.

18  So we are woking on that.  We are in communication.

19       THE COURT:  Okay.

20       MR. FIELD:  Apparently it should be paid to the

21  United States of America.

22       THE COURT:  Not surprising.

23       MR. FIELD:  Anyway, I think we can represent that we

24  are actually making progress on that.

25       MR. LOEVY:  I think that's accurate.

3

1          THE COURT:  I am glad to hear that.  And when that
2  gets done, what's going to happen?  You know we had one action
3  that's been sort of a pending matter that I think is hinging
4  really on that.  When are we going to be able to deal with
5  that?
6          MR. LOEVY:  That's the only piece.  I will call
7  today.  Obviously that's the one that's sort of waiting.
8          THE COURT:  Yes.
9          MR. LOEVY:  That's one on the indemnification.
10         THE COURT:  Well, look.  When you finish up here I
11 will give you a date.
12         As you might guess, I have put you at the end here
13 with malice aforethought, because there are a lot of things
14 that I thought had to be dealt with.  My first question of you
15 is what happened to the efforts that you said you were
16 engaging in terms of dealing with this question of what
17 properly goes into the court record?
18         MR. LOEVY:  It is disappointing, your Honor.  We can
19 each put on our version.  But I talked to Mr. Pearson.
20 Obviously they are lead counsel on that side.  And we reached
21 an agreement they were going to do what we said in court:
22 They were going to send me a list of both the jury
23 instructions and the exhibits that they thought should be part
24 of the record.
25         I called Mr. Pearson when we didn't get it.  We

10

1  exhibit.  If it's before the Court, if it's something -- I

2  would assume at this trial that you were given an exhibit

3  booklet that had all of the proposed exhibits, that you had an

4  opportunity to look at that.  I think anything that this

5  Court, anything that was in this courtroom that this Court had

6  an opportunity to review is part of the record.  And the Court

7  of Appeals should have the opportunity to look at that.  Now

8  as far as --

9          THE COURT:  That's not the law.

10         MR. NEWMAN:  -- the scope of the record that's for

11 the Court of Appeals to make the determination.

12         THE COURT:  I recognize that's part of the record.

13 And I am going to ask that a copy of this, of today's

14 transcript, be supplied to the Court of Appeals so they will

15 understand the predicate of what I have indicated.

16         MR. NEWMAN:  And we intend to do that, your Honor.

17 We have ordered all of the transcripts that have dealt with

18 the motion to supplement the record, and those will also be --

19         THE COURT:  I am planning to go on.

20         Now I keep quite meticulous trial notes.  Every

21 exhibit that's referred to in the course of the trial -- you

22 can be seated -- is reflected in red for highlighting.  And I

23 keep a separate entry in which I use the final pretrial order

24 that has this laundry list of all potential exhibits.  I use

25 that to enter the page of my trial notes where an exhibit is

11

1  first referred to.  And that's exactly what I was doing at the

2  bottom of that page that you included here.

3          And notice again I made it plain I was *not* talking

4  there about what exhibits go to the jury, because that may be

5  a separate subject.  There may be things, although in

6  evidence, for one good reason or another may not be sent back.

7  What I was talking about was what was in evidence.  And I

8  was -- that was solely the question of the exhibits, which

9  exhibits by reason of having been referred to in testimony,

10  were there.  So as I began by saying, that's just an

11  inaccurate statement.

12          Now let me turn, if I may, to the jury instructions

13  on which the essential point is that it's really quits

14  misleading to be tendering as parts of the record on appeal

15  jury instructions that were voluntarily withdrawn by counsel.

16  Now that's only thing that I want to focus on for a moment.

17          Jesse gave me a copy of the transcript of the pages

18  that covered the very lengthy and detailed jury instruction

19  conference.  I note that regrettably there were a lot of

20  errors in the transcription, but my hope is that the reader

21  who wasn't present, as I was, is not going to find that any of

22  those obscure what I think of as the fundamental issue that I

23  want to address here.

24          Although I believe that it emerges from the

25  discussion that took place during the conference, let me just

12

1  by way of background explain the procedure that preceded the

2  conference.  Each side had delivered to me its set of draft

3  instructions.  And as I always do, what I did was to mark up

4  the sets with grammatical and cosmetic changes.  But in

5  addition to that, when it came to such critical instructions

6  as the elements instruction, what I also did on that and those

7  was to edit them carefully with handwritten deletions and

8  insertions.  And then I distributed to each side a photocopy

9  of the marked-up instructions so that we have could use that

10  at the beginning of our conference.

11          And then what I did was to go, as always, right down

12  the line and explained at the outset that -- I will always say

13  something like, "Unlike Contracts 101 in law school, silence

14  connotes acquiescence."  That is, that an objection had to be

15  noted when I said that an instruction would be given, or that

16  it would be given as modified, or that the instruction would

17  be treated as nonobjectionable.  And as you can see, I dealt

18  with the defense submissions that corresponded to the

19  plaintiff's submissions at the same time.

20          Now it strikes me as quite ironic in a way that the

21  purported support that is supplied for the current possition

22  advanced by the defendant is the affidavit of Ms. Knight.

23  Because in candor and regrettably, her principal role in these

24  proceedings in some respects tended to be that of either an

25  obstructionist or spoiler.