# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL TILLMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 10 C 4551 |
| ) | |
| JON BURGE, former Chicago Police ) | Judge Rebecca R. Pallmeyer |
| Department Commander; RICHARD M. DALEY, ) | |
| former Mayor and former State's Attorney; ) | |
| JOHN BYRNE, former CPD Sergeant; ) | |
| PETER DIGNAN, former CPD detective; ) | |
| RONALD BOFFO, former CPD detective; ) | |
| JACK HINES, former CPD detective; ) | |
| GEORGE PATTON, former CPD detective; ) | |
| Estate of JOHN YUCAITIS, former CPD detective; ) | |
| TIMOTHY FRENZER, former Cook County ASA; ) | |
| LeROY MARTIN, former CPD Superintendent; ) | |
| TERRY HILLARD, former CPD Superintendent; ) | |
| GAYLE SHINES, former OPS Director; ) | |
| THOMAS NEEDHAM, former aide to ) | |
| the CPD Superintendent; CITY OF CHICAGO; ) | |
| COOK COUNTY, ILLINOIS; and ) | |
| COOK COUNTY STATE'S ATTORNEY'S OFFICE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

In a July 20, 2011, memorandum opinion, this court denied Defendant Richard M. Daley's motion to dismiss Counts V and X of Plaintiff Michael Tillman's Complaint. *See Tillman v. Burge*, ___ F. Supp. 2d ___, 2011 WL 2975671, at *22-24 (N.D. Ill. July 20, 2011). In those counts, Tillman alleges that Daley participated in a conspiracy to violate Illinois state law, and in a racially motivated conspiracy to deny Tillman the equal protection of the laws in violation of 42 U.S.C. §§ 1985 and 1986. The court also recognized that Plaintiff's allegations raised a conspiracy claim under 42 U.S.C. § 1983.[1] For the reasons set forth below, the court denies Defendant Daley's

---

[1] In a portion of the July 20 opinion, the court suggested Plaintiff had alleged three
(continued...)

motion for reconsideration, filed on August 5, 2011.

## **DISCUSSION**

The court maintains broad authority to reconsider an interlocutory order. *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 694 n.5 (7th Cir. 2007); *see also* FED. R. CIV. P. 60(b). A district judge retains "inherent authority to reconsider an interlocutory order because such orders are 'subject to revision at any time before the entry of judgment adjudicating all the claims.'" *Zurich Capital Mkts. Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005) (citing FED. R. CIV. P. 54(b)). Though Rules 59(e) and 60(b) govern post-judgment motions, courts often refer to the standards set forth in those rules when discussing motions for reconsideration of interlocutory orders, and indeed, the standards are similar. For example, "[a] district court may reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008); *see also Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571-72 (7th Cir. 2006) ("The authority of a district judge to reconsider a previous ruling in the same

---

¹(...continued)
conspiracy claims: a state law claim, a § 1985 claim, and a § 1983 claim. *Tillman*, 2011 WL 2975671, at *22. Although Defendant has not raised the issue, the court on its own notes this is not quite accurate. Plaintiff labeled Count V as a conspiracy claim under Sections 1985 and 1986, and labeled Count X as a state claim for conspiracy. Plaintiff's failure to invoke § 1983 as a basis for his conspiracy claim is not fatal to such a claim, however, because, as the Seventh Circuit has explained, "notice pleading requires the plaintiff to allege just enough to put the defendant on notice of facts providing a right to recovery and not to cite to the appropriate statute creating that right." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1024 n.19 (7th Cir. 2000) (considering conspiracy liability under both Sections 1985 and 1983 even though the plaintiff cited only to § 1983 in his complaint). Plaintiff certainly gave Defendants notice of his § 1983 claim by alleging that Defendants "together reached an understanding, engaged and continue to engage in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to commit the unconstitutional overt acts set forth in the facts above." (Compl. ¶ 119). Furthermore, Defendants Officers and the City of Chicago, and Defendant Daley through his incorporation of those Defendants' memorandum of law, recognized Plaintiff's complaint to state a conspiracy claim under § 1983. (Def. Officers' and City of Chicago's Mem. of Law in Supp. of Mot. to Dismiss [68] (hereinafter "Def. Officers' and City of Chicago's Mem."), at 11.)

litigation . . . is governed by the law of the case, which authorizes such reconsideration if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous.").

The court's ruling on the motion to dismiss is not a final order, but it was not "intended as [a] mere first draft[ ], subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). In addressing this motion, the court notes that in his original motion to dismiss [65], Defendant Daley made only brief mention of conspiracy allegations, arguing in a single paragraph that "[t]he claim of conspiracy does not invalidate Mr. Daley's entitlement to absolute immunity." (Def. Richard M. Daley's Mot. to Dismiss Pl.'s Compl. ¶ 16.) Defendant did incorporate the Defendant Officers' arguments on the conspiracy issue. (*Id.* ¶ 3 n.2.) Those arguments, however, were also relatively brief: Defendant Officers asserted that the conspiracy claims lacked specificity; that the conspiracy claim should fall along with the other constitutional claims; and that there was no racially motivated § 1985 conspiracy. (Defendant Officers' & City of Chicago's Mem. at 10-12.)

Daley presents two principal arguments in favor of his motion for reconsideration: First, he argues that the court "mistakenly relied on allegations pertaining to his role as Cook County State's Attorney in sustaining plaintiff's conspiracy claims against him" because he is entitled to absolute prosecutorial immunity with regard to those actions. (Def.'s Mot. ¶ 5.) Second, he contends that "plaintiff's allegations fail to support any conclusory assertion that Mr. Daley as Mayor was part of a conspiracy to cover up and suppress evidence because his challenged conduct as Mayor did not amount to unlawful suppression." (*Id.*) The court takes each argument in turn.

## I. Absolute Immunity

Defendant contends that he enjoys absolute immunity for all actions at issue in this case that he allegedly engaged in as State's Attorney, a position he held from 1981 to 1989. (Def.'s Mot.

3

¶ 6.)  In denying Daley's motion to dismiss the conspiracy claims, Defendant urges, the court relied improperly on four allegations in the Complaint relating to Daley's time as State's Attorney. Specifically, Plaintiff has alleged that Daley "closely monitored developments in the manhunt" for Andrew Wilson, another arrestee allegedly tortured by Burge and other Defendants.  (Compl. ¶ 52.) As a result of that monitoring, Plaintiff alleges, Daley "learned from numerous sources of the widespread abuse . . . , including the torture and abuse of Andrew Wilson and did nothing to prevent or stop that torture and abuse or to discipline, investigate, or otherwise bring to justice Burge and the other detectives who perpetrated it."  (*Id.*)  Second, Plaintiff alleges that Daley was informed of Wilson's arrest on February 14, 1982; though he does not suggest that Daley personally knew of Wilson's alleged torture as it was occurring, Plaintiff asserts that Daley's subordinates knew of the torture and did nothing to stop it.  (*Id.* ¶ 56.)  Between the time of Wilson's arrest and Plaintiff's own arrest, the State's Attorney's Office, under Daley's direction, "prosecuted at least thirty African American men who were tortured by Defendants Burge and Byrne and Area 2 detectives."  (*Id.* ¶ 63.)  Plaintiff alleges that Daley did not disclose exculpatory information with regard to torture under Burge's watch that would have undermined those prosecutions, nor did he pursue an investigation into other allegations of torture.  (*Id.*)  Finally, Plaintiff alleges that, because he presumably reviewed cases in which the death penalty was at issue, Daley knew that Wilson and many other African American men claimed to have been tortured in identical ways.  (*Id.* ¶ 65.)  Despite his knowledge of credible claims of torture, Plaintiff alleges, Daley declined to investigate the wrongdoing and failed to disclose exculpatory information.  (*Id.*)

Defendant Daley is correct that he is shielded by prosecutorial immunity for much of his alleged conduct, such as concealment of exculpatory evidence. *Imbler v. Patchman*, 424 U.S. 409, 431 (1976). Plaintiff's conspiracy claim, however, presents a more complicated question than whether Daley enjoys immunity for his own actions—the question is whether he enjoys immunity

for the actions of others involved in the conspiracy. Defendant argues that he does, and cites Judge Bucklo's statement that "the Seventh Circuit has expressly held that 'prosecutors do not lose their absolute immunity by allegations that they conspired to perform actions that are shielded by immunity.'" *Kitchen v. Burge*, No. 10 C 4093, 2011 WL 1485301, at *9 n. 2 (N.D. Ill. Apr. 19, 2011) (quoting *Johnson v. City of Joliet*, No. 1:04CV06426, 2006 WL 1793574, at *5 (N.D. Ill. June 27, 2006)) (citing *French v. Corrigan*, 432 F.2d 1211 (7th Cir. 1970)). The court agrees. Daley certainly would not lose immunity for *his* concealment of exculpatory evidence, for which he would otherwise be immune, simply because he conspired with others to engage in the concealment. But "the function of conspiracy doctrine is . . . to yoke particular individuals to the specific torts charged in the complaint." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). The real question, therefore, is whether Daley enjoys immunity for the non-immune actions of *others* involved in the conspiracy.

The Seventh Circuit has explained that a prosecutor is not always absolutely immune from conspiracy suits when the conspiracy involves acts by non-immune coconspirators. In *Peña v. Mattox*, a prosecutor claimed immunity in a lawsuit alleging that the prosecutor had conspired with a state court judge and others to falsely charge the boyfriend of the judge's niece with a felony; their goal was to keep the boyfriend imprisoned while the niece's family took her out of the state to deliver the boyfriend's child and put the child up for adoption. 84 F.3d 894, 895-96 (7th Cir. 1996). Prosecutorial immunity has its limits, as the Seventh Circuit explained:

> [Defendant] claims immunity as a prosecutor . . . , and rightly so with regard to everything that *he* did. . . . But the complaint alleges that he was a member of a conspiracy that went beyond the criminal prosecution of the plaintiff. A prosecutor has no immunity for the acts that he does outside his role as a prosecutor; and the law of conspiracy would impute to him, as a coconspirator, the acts of the other, nonprosecutor members of the conspiracy. The acts directly connected with the criminal prosecution were not the most significant acts committed in furtherance of the conspiracy. . . .
> It would not do to strip a judge or prosecutor of his immunity merely because he conspired with nonimmune persons. But we are pretty sure that this principle does not extend to a case in which the conduct of the prosecutor's coconspirators

includes acts wholly unrelated to the prosecutorial role. No doubt prosecutorial immunity would be worth little if it could be stripped away upon proof that the prosecutor "agreed" with his principal witness that the latter would fabricate evidence against the accused. But to take the next step and hold that it protects a prosecutor who hires a hit man to kill the accused should the latter be acquitted would carry the immunity both outside its historical scope and beyond the point at which it is necessary to protect prosecutors from being harassed by suits by the prosecuted. *Buckley* [*v. Fitzsimmons*, 509 U.S. 259, 277 (1993)] holds that a prosecutor lacks absolute immunity for violating the plaintiff's rights while conducting investigative work even if that work produces evidence that the prosecutor could with absolute immunity present to a grand jury. We do not think the prosecutor's liability is less if he hires the investigator rather than conducting the investigation himself, and agrees that the investigator shall proceed without regard to the rights of the persons investigated.

*Id.* at 896-97 (citations omitted).[2] The *Peña* court acknowledged that the prosecutor enjoyed absolute immunity for his actions "such as the drafting or authorization of the original criminal complaint against the plaintiff, the procuring of the warrant, the request to increase [the boyfriend's] bail, and the request that [the boyfriend] be forbidden, as a condition of his punishment, to see [the niece]." *Id.* Absolute immunity did not, however, extend to nonprosecutorial acts of coconspirators, such as taking the niece out of the state and putting the child up for adoption, which could be imputed to the prosecutor. *Id.*

Thus, whether a prosecutor enjoys immunity for the actions of non-immune coconspirators appears to turn on whether the underlying activity at issue goes "beyond the criminal prosecution of the plaintiff" and whether the non-immune coconspirators commit acts "wholly unrelated to the prosecutorial role." *Id*; *see also Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1145 (2d Cir. 1995) ("As this Court and others [sic] circuits have repeatedly held, since absolute immunity covers 'virtually

---

[2] In *Buckley*, cited by the Seventh Circuit in *Peña*, the Supreme Court considered allegations that prosecutors had allegedly "conspired to manufacture false evidence that would link [plaintiff's] boot with the bootprint [a] murderer left on the front door [of a crime scene]." 509 U.S. at 272. The Court concluded the prosecutors were not shielded by immunity for such conduct because they were working "hand in hand" with law enforcement, and "[t]heir mission . . . [to manufacture such evidence] was entirely investigative in character." *Id.* at 272-75. Prosecutors enjoy absolute immunity only for prosecutorial actions, not for investigative acts. *Id*.

6

all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate,' *when the underlying activity at issue is covered by absolute immunity*, the 'plaintiff derives no benefit from alleging a conspiracy." (emphasis added) (citation omitted) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) and *Hill v. City of New York*, 45 F.3d 653, 659 n.2 (2d Cir. 1995))). Put another way, the operative question is whether the underlying constitutional violation committed by the coconspirator is one that, had it been committed by the prosecutor, would be covered by prosecutorial immunity. This inquiry fits within the "functional approach" to the common-law tradition of absolute immunity, "which looks to 'the nature of the function performed, not the identify of the actor who performed it.'" *Buckley*, 509 U.S. at 269 (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)).

Applying this functional analysis to the case before this court, the court asks whether prosecutorial immunity applies to the underlying violations that Plaintiff alleges Daley, as State's Attorney, conspired to commit. To review, the claims that survived Defendants' motions to dismiss, besides the conspiracy claims, are the § 1983 claim for deprivation of fair trial and wrongful conviction against Defendant Officers, the Municipal Defendants, and Assistant State's Attorney Frenzer (Count I); the § 1983 coercive interrogation claim against Defendant Officers and Frenzer (Count IV)*;* the state law claim of malicious prosecution against Defendant Officers, the Municipal Defendants, and Frenzer (Counts VIII); and the state law claim of intentional infliction of emotional distress (IIED) against Defendant Officers and Frenzer (Count IX).[3]

Count I is predicated on *Brady* violations, for which prosecutors are ordinarily exempt. Daley is correct that simply alleging conspiracy with nonimmune individuals does not defeat Daley's prosecutorial immunity defense because disclosure of exculpatory information is within the

---

[3] The court dismissed the IIED charges against the Municipal Defendants and Defendant Daley in a separate opinion on October 12, 2011. *Tillman v. Burge*, No. 10 C 4551, 2011 WL 4837481 (N.D. Ill. Oct. 12, 2011).

7

prosecutor's role. Drawing on the examples used in *Peña*, the present situation is closer to a prosecutor's agreeing to offer perjured testimony, which the *Peña* court observed would fall within prosecutorial immunity, than it is to a prosecutor's agreeing to hire a hitman to kill a criminal defendant should he be acquitted, which the *Peña* court suggested would not. Indeed, as the Supreme Court has observed, offering perjured testimony and failing to disclose exculpatory evidence are two sides of the same coin. *See Ibler*, 424 U.S. at 431 n.34 ("A claim of using perjured testimony simply may be reframed and asserted as a claim of suppression of the evidence upon which the knowledge of perjury rested. . . . Denying absolute immunity from suppression claims could thus eviscerate, in many situations, the absolute immunity from claims of using perjured testimony.")

The same logic applies to the state law claim of malicious prosecution. Prosecution is the very definition of a prosecutor's role. Therefore, merely alleging conspiracy to maliciously prosecute with non-immune individuals should not defeat a prosecutor's claim of absolute prosecutorial immunity. As for the other state law claim alleging IIED, this court dismissed that claim against Defendant Daley because the facts Plaintiff alleges do not suggest that Daley acted intentionally or recklessly against Tillman. *See Tillman v. Burge*, No. 10 C 4551, 2011 WL 4837481, at *2 (N.D. Ill. Oct. 12, 2011). The court is unwilling to conclude that a defendant who does not have the requisite mental state required for IIED liability could conspire to commit an IIED.

That leaves the claim for coercive interrogation. As this court observed in ruling on the motion to dismiss in regards to ASA Frenzer's liability, a prosecutor who participates in an investigation acts in a role as investigator and is therefore not entitled to absolute prosecutorial immunity. *Tillman*, 2011 WL 2975671, at *19-20. Thus, a charge of conspiring to engage in coercive interrogation could survive a prosecutorial immunity defense. But Plaintiff has not alleged that Defendant Daley was part of any agreement to torture Plaintiff. Rather, Plaintiff unsuccessfully sought to hold Daley liable under § 1983 for coercive interrogation under a "failure to investigate

and intervene" theory. Plaintiff has not sufficiently pleaded that Daley was a party to a conspiracy to coercively interrogate Plaintiff, and the court concludes that his actions as State's Attorney cannot support a conspiracy claims under § 1983 or § 1985.

The situation is a bit more complicated regarding Plaintiff's conspiracy claim under § 1986. That section establishes a cause of action against anyone who is aware of a § 1985 conspiracy and could have stepped in to prevent it, but fails to do so:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . .

42 U.S.C. § 1986. Significantly, an individual may be liable under § 1986 even if he has not "participated in the conspiracy or shared the discriminatory animus that motivated the conspiracy." *Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997). To state a claim under § 1986, Plaintiff must show that Defendant Daley had "(1) knowledge that any of the conspiratorial wrongs are about to be committed, (2) power to prevent or to aid in preventing the commission of those wrongs, (3) neglect to do so, where (4) the wrongful acts were committed, and (5) the wrongful acts could have been prevented by reasonable diligence." *Bell v. City of Milwaukee*, 746 F.2d 1205, 1233 (7th Cir. 1984), *overruled on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005); *see also Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994) ("[A] § 1986 plaintiff must show that: (1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed.")

Several courts have dismissed § 1986 conspiracy claims on prosecutorial immunity

9

grounds.[4]  In each of these cases, however, the courts dismiss the § 1986 claim where the underlying violations supporting the § 1983 and §1985 claims are related to the prosecutorial role. The case law thus does not require the conclusion that a prosecutor is immune from § 1986 liability where the underlying violation supporting § 1985 liability is conduct outside the prosecutor's role. *See Waller v. Butkovich*, 584 F. Supp. 909, 929-30 (D.C.N.C. 1984) (rejecting federal official defendants' claim of absolute prosecutorial immunity where the plaintiff alleged that, despite advance knowledge, the federal officials failed to prevent a conspiracy by members of the Ku Klux Klan and the American Nazi party to attack an anti-Klan rally).  Thus, Daley could lack prosecutorial immunity from liability under § 1986 for a conspiracy by Defendant Officers and ASA Frenzer to engage in coercive interrogations of African American suspects at Area 2 in violation of § 1985.

To proceed against Daley on such a claim, Plaintiff would have to establish a § 1985 conspiracy among the Defendant Officers and/or ASA Frenzer and show that Defendant Daley had actual knowledge of that § 1985 conspiracy. Daley's supervisory role, standing alone, is insufficient for such a showing.  *See Hampton v. City of Chicago*, 484 F.2d 602, 610 (7th Cir. 1973) (dismissing § 1986 claim against Mayor Richard J. Daley and a police superintendent because the plaintiff's allegation "that due to their positions of authority and responsibility, [they] knew of the conspiracy against the plaintiff" was insufficient).  Plaintiff suggests he can meet this test.  He alleges that by the time of Plaintiff's torture in 1986, Defendant Daley "had near-certain personal knowledge that Andrew Wilson had been tortured and that numerous other African Americans had been tortured, abused, and terrorized by Burge and his men during the Wilson manhunt." (Compl.

---

[4]  *See Snelling v. Westhoff*, 972 F.2d 199, 200 (8th Cir. 1992) (dismissing, on the basis of absolute prosecutorial immunity, claims against prosecutor for conspiracy to present false testimony in violation of §§ 1983, 1985, and 1986); *Lewis v. Franklin*, No. C-03-0359 MMC, 2007 WL 30592, at *4 n.2 (N.D. Cal. Jan. 3, 2007) (dismissing, on the basis of prosecutorial immunity, § 1983, § 1985, and § 1986 claims alleging a conspiracy to persuade a witness to give false testimony); *Sims v. Kernan*, 29 F. Supp. 2d 952, 959 (N.D. Ind. 1998) (dismissing §1985 and § 1986 claims involving "the initiation and pursuit of a criminal prosecution")

¶ 66). In addition, Daley allegedly knew of claims that Burge and the other detectives were "continuing to practice extreme physical abuse and torture against African American suspects." (*Id.*) Plaintiff contends that Defendant Daley acquired personal knowledge of mistreatment at Area 2 by monitoring the 1982 manhunt for the killers of two Chicago Police officers; from a February 17, 1982, letter from the head physician at the Cook County Jail, forwarded to Daley by Superintendent Brzeczek, informing Brzeczek of police brutality suffered by Andrew Wilson; and from Daley's own review of capital murder cases of numerous victims of torture at Area 2. For purposes of this motion, the court will assume that these allegations are sufficient to support an inference that Daley was aware of a racially motivated conspiracy to torture African American suspects at Area 2.

What ultimately dooms the effort to state a § 1986 conspiracy claim against Daley as State's Attorney is the requirement that Plaintiff plausibly allege that Daley could, with reasonable diligence, have prevented the alleged conspiracy to torture African American suspects. In the court's previous opinion addressing the motion to dismiss the coercive interrogation claim against Defendant Daley, the court concluded "that too many variables stand in the way of a determination that there is a causal connection between Daley['s] . . . failure to investigate and the deprivation of Plaintiff's rights," *Tillman*, 2011 WL 2975671, at *21, and that the "'chain of inferences . . . [was] too tenuous' to support a claim'" against Daley. *Id.* (quoting *Orange v. Burge*, No.04 C 0168, 2008 WL 4425427, at *5 (N.D. Ill. Sept. 25, 2018)). This court noted that "[t]he many years it has taken for the allegations fo torture at Area 2 to come to light" makes the notion that "the wrongdoing would have stopped once an inquiry was launched . . . simply too tenuous." *Id.* For the same reasons that the court concluded that Plaintiff could not establish that Daley's failure to intervene proximately caused Plaintiff's torture, the court now finds that Plaintiff has not stated a plausible § 1986 claim for failure to prevent a § 1985 conspiracy to torture Plaintiff.

Daley, as State's Attorney, is shielded by absolute prosecutorial immunity from claims of

11

conspiracy to suppress exculpatory evidence and to maliciously prosecute Plaintiff. And Plaintiff has not raised plausible claims that Daley conspired to commit IIED or coercive interrogation. Accordingly, the court agrees with Daley that Plaintiff cannot use Defendant Daley's actions as State's Attorney in support of a conspiracy claim.

## II.    Daley's Actions as Mayor

Defendant next argues that, because any actions he took as State's Attorney cannot be a basis for the conspiracy claim, Plaintiff has not alleged a basis for concluding that Daley was involved in the conspiracy based solely on his actions as Mayor. (Def.'s Mot. ¶¶ 8, 9.) In support of the challenge to conspiracy claims against him in his capacity as Mayor, Defendant Daley first asserts that "[t]here is no allegation Mr. Daley as Mayor concealed or covered up any evidence of *plaintiff's* torture at Area 2." (*Id.* ¶ 10.) Defendant next points to the court's analysis of the *Brady* claim against Daley, which the court dismissed because Plaintiff failed to identify what exculpatory information Daley allegedly concealed, and argues that the court's reasoning concerning that claim requires dismissal of the conspiracy claims, as well. (*Id.* ¶ 11.)

The court has already addressed Defendant's argument that no *Brady* violation could have occurred because the type of evidence allegedly suppressed did not involve Plaintiff. The court explained that, "[h]ad Daley been in possession of undisclosed information that Burge and his subordinates had engaged in other instances of torture at Area 2, such information could be material and exculpatory even if it did not relate directly to Plaintiff." *Tillman*, 2011 WL 2975671, at *14. Defendant presents no argument that calls that conclusion into question, nor any argument that was not presented in his earlier motion and addressed by the court.

The court concludes that Plaintiff sufficiently alleged that Daley, as Mayor, participated in a conspiracy that included the concealment of exculpatory evidence. This conclusion is not undermined by Defendant's citation to the court's conclusions regarding the *Brady* claim against

Daley. That the allegations may not have been sufficient to state a substantive *Brady* violation against Mayor Daley himself does not mean they were insufficient to allege his role in a conspiracy that included *Brady* violations. The court notes that the allegations it found insufficient to state a *Brady* violation against Daley included public statements discrediting the Goldston report, refusal to launch investigations into allegations of police torture, promotion of one of those involved in police torture, and public statements undermining the findings of the special prosecutor investigating police torture. (Compl. ¶¶ 76-83, 93, 97.) Individual actions taken in furtherance of a conspiracy need not be illegal in order for the participant to be liable for the illegal acts performed in furtherance of the conspiracy. *See United States v. Cueto*, 151 F.3d 620, 636 ("'[A]cts which are themselves legal lose their legal character when they become constituent elements of an unlawful scheme.'" (quoting *United States v. Bucey*, 876 F.2d 1297, 1312 (7th Cir. 1989))). The Seventh Circuit has recognized numerous conspiracies aimed at covering-up prior illegal actions. (In many instances, these were considered two independent conspiracies, as they may well be here.[5]) In one case, for example, the court noted that plaintiffs presented *prima facie* evidence of two conspiracies, the second of which "was intended to frustrate any redress the plaintiffs might seek and, more importantly, to conceal the true character of the . . . activities of the defendants involved in the first conspiracy." *Hampton*, 600 F.2d at 621-22. At the pleading stage, Plaintiff's allegations sufficiently support the allegation that Daley participated in a conspiracy to conceal evidence of police torture through his public statements as Mayor, and the internal actions he took (or failed to take) in that role.

Finally, Defendant argues that there can be no liability for Daley on the conspiracy claims because "[a]bsent an underlying constitutional claim, a § 1983 conspiracy claim necessarily must

---

[5] "[T]he existence of multiple conspiracies is really a fact question as to the nature of the agreement, it is for the jury to decide whether there is one agreement or several." *Hampton v. Hanrahan*, 600 F.2d 600, 622 (7th Cir. 1979), *judgment reversed in part on other grounds*, *Hanrahan v. Hampton*, 446 U.S. 754 (1980).

fail." (Def.'s Mot. ¶ 12.) But, of course, Plaintiff does have numerous underlying constitutional claims that survived Defendants' motions to dismiss. That none of those claims has survived against Daley himself does not matter for conspiracy purposes. The very purpose of the conspiracy doctrine is to hold coconspirators liable for the substantive acts of those with whom they have entered a conspiracy. *Pinkerton v. United States*, 328 U.S. 640, 647 (1946).

## CONCLUSION

For the aforementioned reasons, Defendant Daley's motion for reconsideration [164] is denied.

ENTER:

Dated: November 2, 2011

_____
REBECCA R. PALLMEYER
United States District Judge